# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| ELPIDIA Z. LOPEZ,<br>       Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br>       Defendant. | NO. EP-10-CV-00218-RFC<br>(by consent) |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner), denying her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382c(a)(3). Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## PROCEDURAL HISTORY

On August 28, 2006, Plaintiff filed her application for benefits alleging disability due to impairments that became disabling on March 14, 2006. (R:77-81)[1] The application was denied initially and on reconsideration. (R:39-40; 44-54) Pursuant to Plaintiff's request, an Administrative

---

[1] Reference to documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(R:[page number(s)])".

Law Judge (ALJ) held a hearing to review her application *de novo* on July 1, 2008, at which both Plaintiff and a vocational expert testified. (R:19-38, 55-61) The ALJ issued his decision on October 24, 2008, denying benefits at step four of the sequential evaluation process. (R:8-17) Plaintiff's request for review was denied by the Appeals Council on March 15, 2010. (R:4-7) Plaintiff was granted an extension of time to file her notice of civil action. (R:1-3)

On June 11, 2010, Plaintiff submitted her complaint along with a motion to proceed *in forma pauperis*. (Doc. 1) The motion was granted and her complaint was filed. (Docs. 2-3) The Commissioner filed an answer on August 20, 2010, and a certified copy of the transcript of the administrative proceedings was received on August 24, 2010. (Docs. 18, 22) On December 21, 2010, Plaintiff's brief was filed. (Doc. 34) On January 14, 2011, the Commissioner filed his brief in support of the decision to deny benefits. (Doc. 35)[2]

## ISSUES

Plaintiff claims that the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, warranting remand. (Doc. 34:2) Plaintiff also contends that the ALJ's finding that Plaintiff can perform her past relevant work was erroneous. (*Id.*)

---

[2] This cause was initially referred and then reassigned by United States District Court Judge Kathleen Cardone to then Magistrate Judge Margaret F. Leachman. (Docs. 1, 20) It was then transferred to Magistrate Judge David C. Guaderrama. (Doc. 28) Finally, it was transferred to this Court on April 5, 2011. (Doc. 36) The parties were ordered to file a new notice of consent or non-consent to Magistrate Judge jurisdiction on April 7, 2011, and both parties entered notices consenting to this Court deciding the appeal. (Docs. 37-39)

# DISCUSSION

## A. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984 (1995). Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In reviewing the substantiality of the evidence, the Court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In applying the substantial-evidence standard, the court must carefully examine the entire record, but may not re-weigh the evidence or try the issues *de novo*. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). It may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision," because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, and not the courts, to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

B.  *Evaluation Process*

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a medically determinable impairment that is severe; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. A person's residual functional capacity ("RFC") is what she can still do despite her limitations or impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p.

An individual applying for benefits bears the initial burden of proving that she is disabled for purposes of the Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof on the first four steps, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

C.  *The ALJ's Decision*

First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2010. (R:13) Next, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 14, 2006. (*Id.*) At the second step, the ALJ found that Plaintiff had severe

impairments of "exogenous obesity; bilateral shoulder pain, status post right shoulder surgical repair and chronic lumbar strain with right lower extremity weakness." (*Id.*) The ALJ also found Plaintiff had the following non-medically determinable impairments: headaches and depression. (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments. (R:14)

After careful consideration of the entire record, the ALJ found that Plaintiff had the RFC to perform light work, except that she can only occasionally perform all postural maneuvers and has limitations in grip strength and can occasionally reach in all directions, except overhead; she can perform no overhead reaching. (R:14-16) At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a telephone debt collector. (R:16)

The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 14, 2006, to the date of the ALJ's decision. (R:16)

*D. Analysis*

1. **Treating Physician Opinion**

Plaintiff claims that the ALJ failed to properly evaluate the RFC opinion of one of her treating physicians, Dr. Westbrook. (Doc. 34:3-6) Plaintiff argues that the ALJ failed to evaluate Dr. Westbrook's opinion under the criteria set forth in the regulations at section 404.1527(d). (Doc. 34:4)

"Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Plaintiff avers that there was

5

no examining or treating physician opinion that contradicted Dr. Westbrook's opinion such that the ALJ could reject the opinion without providing the detailed analysis required by the regulations. (Doc. 34:5)

The Commissioner argues that the ALJ was justified in giving the treating physician's opinion less weight in this case because the opinion was an RFC checklist and the statements therein were brief and conclusory and not supported by medically acceptable clinical laboratory diagnostic techniques or any evidence other than Plaintiff's subjective complaints. (Doc. 35:6 (citing *McCoy v. Schweiker*, 683 F.2d 1138, 1147 n. 8 (8th Cir. 1982) (*en banc*) ("as a general rule little weight is afforded to RFC checklists")) An ALJ is not required to defer to medical opinions that are brief and conclusory, and not supported by medically acceptable clinical laboratory diagnostic techniques or are otherwise unsupported by the evidence." *Leggett v. Chater*, 67 F.3d 558, 565-66 (5th Cir. 1995). This consideration is reflected in section 404.1527(d)(3), titled "*Supportability*." The ALJ specifically found that the record as a whole did not support Dr. Westbrook's opinion. (R:15) This Court, likewise, was unable to find any medically acceptable clinical laboratory diagnostic techniques or observations contained in the medical records that would support such limitations. (R:157-253) The Court notes that the only evidence in the record that Plaintiff cites as supporting Dr. Westbrook's opinion is her own testimony. (*See* Doc. 34:4) She, likewise, points only to her own prior statements and Dr. Westbrook's RFC opinion as support for her own credibility, as discussed below. (Doc. 34:8)

Although the ALJ did not articulate his analysis of all of the factors set forth in section 404.1527(d), he nevertheless provided good reason for rejecting Plaintiff's treating physician's opinion. The ALJ considered that after Dr. Westbrook signed his RFC opinion statement, he

6

referred Plaintiff to a hand specialist who examined her and Plaintiff responded well to conservative therapy, reporting reduced pain and numbness. (Doc. 35: 6-7; R:15-16, 239, 241, 244-253) The ALJ considered that the consulting physician set forth no specific limitations. (R:16) Further, the non-examining consulting physician's opinion, based on a review of Plaintiff's medical records, including the consultative examination report, reflected much less limitation. (*Id*.) The non-examining physician noted that there was no reported history of chronic back pain in the medical evidence of record as of November 9, 2006. (R:221)

The ALJ properly considered Dr. Westbrook's opinion and provided good reasons, supported by the regulations and substantial evidence in the record, for rejecting it.

### 2. Plaintiff's Credibility

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's credibility by failing to give the subjective evidence of Plaintiff's pain and suffering the full weight that is required and failing to consider the range of factors outlined in section 404.1529(c) for evaluating Plaintiff's credibility. (Doc. 34:6-7 fn. 1) Plaintiff also accuses the ALJ of picking and choosing the evidence most favorable to his decision and ignoring contrary evidence in Plaintiff's paperwork and testimony and in her treating physician's opinion. (Doc. 34:7-8)

In determining the credibility of claimant's testimony, the ALJ can consider medical reports, the claimant's daily activities, and the medications the claimant is taking. 20 C.F.R. 404.1529(c); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). While the ALJ's findings regarding the effect of the subjective complaints are entitled to considerable judicial deference, the ALJ must articulate credible and plausible reasons for discrediting or rejecting subjective complaints. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). The ALJ, however, is not required to follow formalistic rules in

evaluating credibility. *Id.*.at 163. Nor is the ALJ required to articulate his consideration of each of the factors listed in section 404.1529(c) or each piece of evidence considered relevant to each factor. *Id*.

After finding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they conflicted with the RFC assessed. (R:15) The ALJ noted that Plaintiff had worked for years after her back injury and quit working when she was laid off, not due to her impairments. (*Id*.) In fact, Plaintiff's application reflects Plaintiff's allegations that on March 14, 2006, not only did her conditions first bother her, but they rendered her unable to work that same day, which, coincidentally, was the same day she stopped working because the company relocated to another state. (R:98)

The ALJ also noted that, while Plaintiff testified at the hearing that she could walk for 10-15 minutes at a time, on September 6, 2006, she reported in her paperwork that she walked at least twice a day for an hour at a time. (R:15; 123) In an update on December 18, 2006, Plaintiff stated that she tries to take short walks for exercise. (R:141) Plaintiff did not explain what she meant by "short walks." Nor did she, or anything in the record, indicate that any change in her exercise habits between those dates was caused by a change in her conditions.

The ALJ also noted that Plaintiff had said she was able to clean house, which the ALJ presumed required lifting more than two pounds. (R:15, 123) Plaintiff points out that she also stated that her house cleaning was limited because if she over-exerted herself she would be unable to walk for three to four days, that she is limited in her ability to be in any position for an extended period

8

of time, to lift or carry anything, to bend, kneel, or squat, or to do house and yard work because of her back, and that she also takes thyroid medication and iron and lays down due to pain. (Doc. 34:7; R: 31-33, 123) Plaintiff contends the ALJ erred in relying on such minimal activities to support a finding that Plaintiff's alleged symptoms were not credible. (Doc. 34:8 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)) Plaintiff made such assertions in her daily activity questionnaire dated September 6, 2006. (R:123) Yet, as the ALJ noted, at her consultative examination on October 21, 2006, Plaintiff had a normal gait, was able to stand on heels and toes, and could bend and squat all the way and return to standing, all without difficulty. (R:215)

The ALJ also noted that although Plaintiff stated that she had to lie down three times a day for up to an hour due to pain and drowsiness from her medications, she was not taking any medication that should have made her drowsy. (R:15) Although in her application, in addition to ibuprofen, Plaintiff listed also taking Darvocet for pain, which she stated made her dizzy, in her daily activity questionnaire at that time, Plaintiff did not list laying down as a way to make her physical problems better, nor did she include it in her description of what she would do on an average day. (R:101, 122) In a later update she did list fatigue, but at the same time, she listed her medications as only ibuprofen for pain, indicating that she was no longer taking Darvocet. (R:130-131) She also began to list laying down to feel better when she was frustrated and "bed rest" in describing her average day. (R:136, 138, 140) In a 2007 update, Plaintiff listed her current medications as: Ibuprofen, Iron, and Levothyroid, but later listed only Ibuprofen and Iron. (R:150, 155)

The ALJ had previously noted that the consultative report reflected normal gait, posture, intact muscle strength, and normal sensation, normal range of motion in the lower extremities, with weakness in right lower extremity. (R:14, 214-16) The ALJ also noted that Plaintiff could get on

9

and off the examination table, walk on heels and toes, bend over and squat down and stand up without difficulty, used no assistive devices, and exhibited no sign of ataxia or unsteadiness. (*Id*.) The ALJ, after careful consideration of the evidence in the record, articulated credible and plausible reasons for discrediting or rejecting Plaintiff's subjective complaints. (R:15); *see Falco v. Shalala*, 27 F.3d at 164. There is substantial evidence in the record to support the ALJ's credibility determinations.

### 3. Hypothetical Question

The ALJ found that Plaintiff had the RFC to perform light work, except that she could perform all postural maneuvers only occasionally, had limited grip strength, and could occasionally reach in all directions, except overhead, which she could never do. (R:14) He concluded that Plaintiff was able to perform her past work as a telephone debt collector both as it was actually and generally performed. (R:16) The ALJ also stated that the vocational expert testified that a person who could perform a limited range of light work with reduced bilateral grip, the ability to occasionally perform postural maneuvers, and the inability to reach overhead could perform as a debt collector. (*Id*.)

The ALJ explained that Plaintiff had described her work as sedentary. (R:16) Plaintiff described her job as a collector as follows: She sat on a chair and made phone calls all day, one after another. (R:115) She used machines, tools, or equipment and technical knowledge or skills. (*Id*.) She did not walk or stand, but sat for eight hours a day and did some kneeling. (*Id*.) She did not climb, stoop, crouch, crawl, handle, grab, or grasp big objects, but did write, type, or handle small objects. (*Id*.) She did not lift any weight frequently and the heaviest weight she lifted was less than

ten pounds. (*Id.*) She did not indicate that reaching was required in the performance of her job as a collector for the credit card company. (R:114-15)

The ALJ did not refer to a particular occupation number from the Dictionary of Occupational Titles in his decision. (R:16) In discussing Plaintiff's prior relevant work as a collector at the hearing, the vocational expert referred to DOT 214.382-014, titled "Billing Typist" with alternate titles "Billing Clerk; Invoice Clerk; Order Clerk." (R:34) That position is characterized as sedentary and, as generally performed, requires frequent reaching. DOT 214.382-014. The ALJ did not include the limitation of "only occasional reaching" in all direction in his hypothetical as he did in his decision. (R:15-16, 35) To the extent the ALJ found that Plaintiff's RFC did not preclude performing the functional demands of this job as generally required by employers throughout the national economy- as reflected by the DOT, the ALJ's conclusion is not supported by substantial evidence. Such conclusion is not supported by the vocational expert's testimony, which did not address the issue of reaching in general, only overhead, and it is clearly contradicted by the DOT. The ALJ, however, also found that Plaintiff could perform her previous job as Collector as she actually performed it. (R:16) Nothing in Plaintiff's paperwork or in her testimony reflects that her prior relevant work as a collector, as actually performed, required more than occasional reaching. (R:114-15; 21-37) Nor did Plaintiff make such assertions to the Appeals Council or to this Court. (R:73-76; Doc.34:8-13)

Plaintiff argues that her prior relevant work as a Collector falls under Dictionary of Occupational Titles 241.367-010, titled "Collector" with alternative titles of "Bill Collector; Collection Agent; Outside Collector." (Doc. 34:9) As generally performed, the position is characterized as light work, but even as generally performed, it requires only occasional reaching,

11

handling, fingering, and no climbing, balancing, stooping, kneeling, crouching, or crawling. *See* DOT 241.367-010. As Plaintiff performed the job, however, it was sedentary, as the ALJ explicitly found. (R:16) Again, Plaintiff's description of the job as she actually performed it does not indicate that it required her to do more than occasional reaching. (*See* R:114-15)

In this case, the vocational expert's testimony, alone, is insufficient to establish substantial evidence, because it was not based on a hypothetical question that encompassed all of the limitations the ALJ assessed. This does not mean, however, that such testimony may not be considered. Viewing the evidence in the record as a whole, including the vocational expert's testimony regarding overhead reaching and hand grip—which are not specifically addressed by the DOT, there is substantial evidence supporting the ALJ's conclusion that, given the RFC the ALJ assessed, Plaintiff would be able to perform her prior relevant work, as collector, at least as she had actually performed it. Therefore, Plaintiff is not entitled to relief.

## CONCLUSION

The Court concludes that any deviation from the relevant legal standards was harmless and the ALJ's decision is supported by substantial evidence. Based on the foregoing, it is hereby **ORDERED** that the Commissioner's determination be **AFFIRMED**.

**SIGNED** and **ENTERED** on September 20, 2011.

_____
**ROBERT F. CASTANEDA**
**UNITED STATES MAGISTRATE JUDGE**